UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MARK M. LEWIS, | ) | Civil Action No.: 4:11-cv-0715-MGL-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| OMNI INDEMNITY COMPANY; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, alleging various state law causes of action arising out of a policy or policies of automobile insurance issued by Defendant to Plaintiff.  Presently before the Court are Defendant's Motion for Summary Judgment (Document # 96) and Plaintiff's Motions for Declaratory Judgment (Documents # 107, 115).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to Defendant's Motion could result in a recommendation that the Motion be granted.  Plaintiff timely filed a Response (Document # 108). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC.  Because these Motions are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS

On or around February 27, 2009, Plaintiff, through his independent agent at the Shaw Insurance Agency (Shaw) in Marion, S.C., submitted an application of automobile insurance to

Defendant Omni Indemnity Company (Omni).  Insurance Application (Ex. B to Def. Motion).[1]  The application sought liability coverage for one vehicle, a 1997 Chevrolet Suburban, and rejected collision, comprehensive, rental, towing and customizing equipment coverage. Id. As a result, Omni issued Policy #3415242 to Plaintiff with a term of February 27, 2009, to February 27, 2010. Omni provided the Plaintiff with a Declarations Page reflecting the liability coverage as requested in the application. Declarations Page (Ex. C to Def. Motion).  The Policy also contained uninsured motorist property damage coverage of $25,000.00.  Id.[2]  The premium for the policy totaled $739.88.

Plaintiff requested several changes to the Policy during the term of the Policy to add vehicles or drivers.  Ledger (Ex. D to Def. Motion).  With each requested change, Omni amended its policy covering Plaintiff and issued to Plaintiff an Amended Declarations page.  Amended Declarations Pages (Ex. E to Def. Motion); Arnold Aff. ¶ 4.  The Amended Declarations Pages identified the particular vehicles insured, the applicable coverage for each particular vehicle and the associated premium for the particular coverage for each vehicle.  See Amended Declarations Pages.  In May of 2009, a 2006 Chrysler was added to the policy and included comprehensive and collision coverage, which resulted in an approximately three-fold increase in the premium for that vehicle. Id.  The other two vehicles on the policy at that time, including the 1997 Chevy Suburban, maintained only the liability and uninsured/underinsured coverage.  Id.  At no time did Plaintiff ever

_____

[1]Plaintiff argues that the application submitted by Defendant as Exhibit B is fraudulent because it is not signed by Plaintiff or the agents.  Pl. Response p. 3.  However, he fails to present any evidence to substantiate this argument.  Michael Arnold, Litigation Manager for Omni, avers that the exhibits submitted by Omni are authentic copies of original documents generated by Omni and maintained in the ordinary course of business.  Arnold Aff. ¶¶ 1-2 (Ex. A to Def. Motion).

[2]The policy included underinsured motorist property damage coverage as well.

inform Omni that any of the Amended Declarations pages were incorrect. Arnold Aff. ¶ 4.

On February 27, 2010, Omni renewed Plaintiff's Policy and issued a Declarations Page reflecting a term of February 27, 2010, to February 27, 2011. Declarations Page (Ex. F to Def. Motion). Again, due to specific requests by Plaintiff to Shaw, Omni issued to Plaintiff two Amended Declarations Pages during this Policy term prior to Plaintiff's claim which led to this litigation. Amended Declarations Pages (Ex. G to Def. Motion); see also Ledger. Each Amended Declarations Page, as the ones before them, set forth the coverage and premium which pertained to each vehicle covered by the Policy and the specific coverage applicable to each vehicle. Id. Again, Plaintiff never notified Omni that any information on these pages was incorrect. Arnold Aff. ¶ 4. Plaintiff alleges in his Amended Complaint that he was "too busy in life" to read these Amended Declarations Pages. Amended Complaint p. 28.

On July 10, 2010, an unknown driver struck Plaintiff's Chevy Suburban in a parking lot in Mullins, S.C., and Plaintiff attempted to bring a collision and/or comprehensive claim under his Policy. The Chevy Suburban did not have comprehensive or collision coverage. Declarations Pages (Ex. G to Def. Motion). According to the Omni claims notes, on July 12, 2010, Omni informed the Plaintiff of this lack of coverage, and Plaintiff insisted the Chevy Suburban was supposed to have comprehensive and collision coverage. Claim Notes Entry 14 (Ex. H to Def. Motion). Omni explained to the Plaintiff that it only processes the information it has been provided, but that if a mistake was made, Omni would remedy it. Id. The claim note from July 12, 2010, reflects the Omni's adjuster's notation that though the vehicle did not have comprehensive or collision, it did have uninsured motorist coverage, which would cover a hit and run accident. Id. This entry also includes the statement that a Shaw agent, Danielle, "says that the suburban should have had

comp/coll from December." Id. The next day, an Omni adjuster spoke with another Shaw agent, Deloris, who told the adjuster that Plaintiff informed her that when he added the Chevy Suburban back to the policy on October 26, 2009[3], he intended to add physical damage coverage. Claim Notes Entry 15 (Ex. H to Def. Motion). However, the agent did not have a written endorsement requesting such coverages. Id.[4]

On July 20, 2010, ten days after his accident, the Plaintiff filed an action in Marion County Magistrate's Court against his agent, the Shaw Insurance Agency. Complaint in Magistrate's Court (Ex. I to Def. Motion). Omni was not a party to this lawsuit. Id. Plaintiff alleged that the agency had misled him concerning the type of coverage he had. Id. The agency did not appear, and the Court entered a default judgment against the agency in favor of the Plaintiff in the amount of $7,500.00. See Amended Complaint p. 47.

Omni honored Plaintiff's claim as an uninsured motorist property damage claim. Omni

---

[3]The Ledger reflects that Plaintiff deleted coverage on the Chevy Suburban on August 20, 2009, and added the Chevy Suburban back to the policy on October 26, 2009. See Ledger (Ex. D to Def. Motion). An Amended Declarations Page was issued for each of these changes. See Amended Declarations Pages (Ex. E to Def. Motion). Plaintiff does dispute that the Chevy Suburban was deleted from his policy at some point, but he argues that he could not have done it on August 20, 2009, because he was in federal custody at the time. Pl. Response p. 4.

[4]Plaintiff argues different dates for when he added comprehensive and collision coverage for his Chevy Suburban. Plaintiff argues that he requested comprehensive and collision coverage on his Chevy Suburban at the time he completed his insurance application, which was done in February of 2009. Pl. Response p. 3. However, he argues throughout his Response that he should have had comprehensive and collision coverage on his Chevy Suburban starting in December of 2009, and points to an entry in the claims notes where a Shaw agent who spoke to an Omni adjuster indicates that the Chevy Suburban should have had comprehensive and collision coverage beginning in December of 2009. Pl. Response pp. 2, 9, 14, 16, 20, 21; Claim Notes Entry 14 (Ex. H to Def. Motion). Also, as stated above, the claim notes indicate a different Shaw agent told an Omni adjuster that Plaintiff told her when he made his claim for the July 10, 2010, accident, that he requested to add the vehicle back to the policy in October of 2009, with physical damage coverage. Claim Notes Entry 15 (Ex. H to Def. Motion).

-4-

inspected the vehicle and deemed it a total loss. On or before July 26, 2010, Plaintiff retained attorney Nicholas W. Lewis, Esq. of Ballenger, Barth & Hoefer, L.L.P., to represent him in his dealings with Omni concerning the uninsured motorist claim. Attorney Correspondence (Ex. J to Def. Motion). Plaintiff submitted to Omni a repair estimate of $5,218.41. Repair Estimate (attached to Amended Complaint). Omni estimated that the vehicle was a total loss with a value of $4,131.33. LaFave Aff. ¶¶ 3,5 (Ex. K to Def. Motion).    The parties engaged in negotiations and on August 20, 2010, Attorney Lewis wrote Omni that he had advised Plaintiff of Omni's offer of $4,131.33 (with the Plaintiff retaining the vehicle) and that Plaintiff had accepted. Id. Plaintiff also conferred with the Marion County Magistrate before accepting Omni's offer to ensure that settlement with Omni would not affect his default judgment against Shaw. See Amended Complaint p. 15.

Omni retained local counsel, Attorney Mary LaFave,  to facilitate the paperwork necessary for the resolution of Plaintiff's claim.[5] LaFave reiterated to Plaintiff that Omni was not a party to the judgment he had obtained against his agent and that any settlement he reached with Omni was independent of his judgment he held against the agency. LaFave Aff. ¶ 3. LaFave further explained to Plaintiff that his vehicle was a total loss and that it had been valued at $4,131.33. Id.

On September 20, 2010, Plaintiff and his wife met with LaFave at her office to go over the settlement papers. Id. at ¶ 4. Plaintiff asserts that Delores Shaw, an agent with the Shaw Insurance

---

[5]In his Amended Complaint, Plaintif asserts the he terminated his attorney because the attorney had too many other cases pending and could not handle the case.  Amended Complaint p. 26.  In his Response to Defendant's Motion for Summary Judgment, Plaintiff asserts that he fired his attorney for accepting an offer of $4,131.33.  Pl. Response p. 16.  However, LaFave avers that she made it clear to Plaintiff that he had the right to consult with an attorney and that she represented Omni and their interests in consummating the settlement.  LaFave Aff. ¶ 4. Plaintiff advised her that he understood the terms, had all the paperwork necessary and was comfortable proceeding pro se.  Id.

Agency, Ava Hilliard, with Omni, and LaFave all represented to him that his policy limit was $4,760 based an a "blue book minus deductible minus the cost to retain my truck formula" when it is actually $50,000.[6]  Pl. Response pp. 2, 26.   LaFave avers that she did not misrepresent the amount of coverage available to Plaintiff under the terms of his policy nor did Plaintiff exhibit any confusion over the amount of coverage under his policy.  Id. at ¶ 7.  She further avers that her dealing with Plaintiff pertained specifically to the value of his vehicle, which had been deemed a total loss.  Id.  According to both LaFave and paralegal Sonya Hancock, Plaintiff demonstrated a full understanding of the terms of the settlement. Id. at ¶ 4; Hancock Aff.¶¶ 3-4 (Ex. L to Def. Motion). Plaintiff executed a Settlement Agreement and Release in exchange for $4,131.33. Settlement and Release Agreement (Ex. M to Def. Motion).

On or about October 11, 2010, Shaw was successful in setting aside the default judgment in the Magistrate's Court action. Order Vacating Judgment (Ex. N to Def. Motion). The basis for the Order vacating judgment was that the defendant had been out of the country and was not provided proper notice of the action. Id. Omni has not been involved in the action pending in Magistrate's Court other than providing the agency's counsel with a copy of the Release in response to a subpoena issued by the Agency's counsel.  LaFave Aff. ¶ 6.  Plaintiff appeared to believe that Omni was complicit in the judgment being vacated.  LaFave Letter to Plaintiff (Ex. O to Def. Motion). On February 11, 2011, Ms. LaFave wrote to the Plaintiff and attempted to explain Omni's non-involvement in the Magistrate Court action.  Id.  Plaintiff subsequently filed the present action.

## III.    STANDARD OF REVIEW

---

[6]The Amended Declarations Page indicates that the coverage limit for uninsured motorist property damage coverage is $25,000.  Amended Declarations Pages (Ex. G to Def. Motion).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Plaintiff's Duty to Read Policy

Plaintiff appears to be making two separate but related arguments in this action.  First, he argues that Omni failed to provide him with the comprehensive and collision coverage that he requested.  Second, he appears to argue that the Release document he signed is void because Omni misrepresented to him the amount of uninsured motorist property damage coverage he had and, thus, his signature on the Release was fraudulently induced.

With respect to the lack of comprehensive and collision coverage, Plaintiff admits that he never read the Declarations and Amended Declarations Pages provided by Omni.  He states in his Amended Complaint, "had I not been so busy in life I would have noticed that my coverages were being tampered with."  Amended Complaint p. 28.  He does not deny receiving the Declarations or Amended Declarations Pages.  The Declarations Pages issued at the time Plaintiff purchased the policy and when he renewed the policy as well as the Amended Declarations Pages that were issued each time a change was made to the policy clearly indicate that the Chevy Suburban never had comprehensive or collision coverage.   Plaintiff argues that the Declarations and Amended Declarations Pages submitted in the record are fraudulent.  He attempts to support this argument by pointing to the "squeezed in" typeface on the renewal Declarations Page (Ex. F to Def. Motion) and the fact that he and his wife are listed as drivers on the wrong vehicles as compared to the Declarations Pages issued prior to the renewal.  Pl. Response p. 24-25.  However, these arguments

call for speculation and are insufficient to give rise to an issue of fact as to whether the documents are fraudulent.  Thus, the evidence in the record reveals that Plaintiff's insurance policy never provided comprehensive or collision coverage on his Chevy Suburban.

It is well settled in South Carolina that an insured has the duty of reading his insurance policy and of acquainting himself with its contents. Failure to do so will prevent him from avoiding the written contract on the grounds that he did not know its terms. Provident Life & Acc. Ins . Co. v. Anderson, 166 F.2d 492 (4th Cir. 1948) (citing Able v. Equitable Life Assur. Soc. of the United States, 186 S.C. 381, 195 S.E. 652 (1938)); see also Walpole v. Great American Ins. Companies, 914 F. Supp. 1283, 1291 (D.S.C. 1994) ("Plaintiffs cannot rely on the representations of others as to the policy's contents. An insured has a duty to read the policy he purchases and to abide by its plain terms.").

In Doub v. Weathersby-Breeland Ins. Agency, 268 S.C. 319, 233 S.E.2d 111 (1977), the plaintiff sought coverage for damage caused by a snow and ice storm. Such damage was specifically excluded from coverage under the policy. The plaintiff admitted that he never read the policy.  Id. at 324, 233 S.E.2d at 113. The insurer moved for a directed verdict on the ground, inter alia, that the plaintiff had no right to rely on oral misrepresentation as to the coverage when the written terms were in his possession and available to him.  Id. at 326, 233 S.E.2d at 114.  In granting the motion, the South Carolina Supreme Court noted:

> Plaintiff had eighteen months to inform himself as to the terms, conditions and exclusions in the written contract to which he was a party. He made no effort to do so, and never read the contract. . . . [P]laintiff never read his policy and made no inquiries as to any of its specific terms and provisions, and continued to ignore the written instrument for eighteen months. . . . [O]ne cannot complain of fraud in the misrepresentation of the contents of a written instrument in his possession when the truth could have been ascertained by his reading the instrument. One entering into a

contract should read it and avail himself of every reasonable opportunity to understand its contents and meaning.

Id. at 327, 233 S.E.2d at 114.

Likewise, in the present case, Plaintiff cannot complain of the lack of comprehensive and collision coverage on his Chevy Suburban when he would have been aware of his coverage had he actually read his policy.

The same holds true for the uninsured motorist property damage coverage limits that he argues was misrepresented to him by various individuals. The amount of the policy limit for this type of coverage was clearly set forth in the Declarations and Amended Declarations Pages provided to Plaintiff. Plaintiff "cannot rely on the representations of others as to the policy's contents. An insured has a duty to read the policy he purchases and to abide by its plain terms." Walpole, 914 F. Supp. at 1291. Thus, Plaintiff cannot argue that he was fraudulently induced into accepting the terms of the settlement agreement and signing the release because LaFave and others misrepresented to him the limits of his coverage, which were clearly and unambiguously set forth in his policy.

Furthermore, although Plaintiff appears to not have been represented by counsel at the time he signed the Property Damage Settlement Agreement and Final Release, prior to signing it, Plaintiff retained counsel to negotiate the settlement with Omni and advise him as to the terms of the settlement. When a litigant voluntarily accepts an offer of settlement, either directly or indirectly through the duly authorized actions of his attorney, the integrity of the settlement cannot be attacked on the basis of inadequate representation by the litigant's attorney. In such cases, any remaining dispute is purely between the party and his attorney. Petty v. Timken Corp., 849 F.2d 130 (4th Cir. 1988); see also Kirkland v. Moseley, 109 S.C. 477, 96 S.E. 608 (1918) (devisees who on advice of

-10-

lawyer compromised with others could not have compromise agreement set aside for mistake). Although Plaintiff argues in his Response that he fired his attorney for accepting the $4,131.33 offer[7], Plaintiff was not represented by the attorney at the time he actually accepted and signed the settlement and release agreement.  Furthermore, LaFave avers that she made it clear to Plaintiff that he had the right to consult with an attorney Plaintiff advised her that he understood the terms, had all the paperwork necessary and was comfortable proceeding pro se.  LaFave Aff. ¶ 4.

Finally, Plaintiff admitted by signing the settlement and release agreement that he fully understood and voluntarily accepted the terms of the agreement.  The settlement and release agreement provides,

> **REPRESENTATION OF COMPREHENSION AND UNDERSTANDING OF DOCUMENT**
> In entering into this Settlement Agreement, [Plaintiff] stipulate[s] that although pro se, [he] had the opportunity to seek the advice of attorneys of [his] own choice, concerning all legal and equitable consequences of this Settlement Agreement and that the terms of this Settlement Agreement are fully understood and voluntarily accepted.

Settlement and Release Agreement (Ex. M to Def. Motion).

For these reasons, Plaintiff fails to show that the settlement and release agreement is invalid.

## B.    Valid Release Agreement

The settlement and release agreement signed by Plaintiff contains the following release:

> **1.0   RELEASE AND DISCHARGE**
> 1.1  In consideration of the payment set forth in Section 2.0 below, Claimants hereby completely release and forever discharge Omni Insurance Company and their agents, except Delores Shaw and Shaw Insurance Company, as expressly stated in Civil Action No. 2010-CV-33-10101361, officers, servants, employees, and any and all other persons, firms, corporations, from any and all past, present or future claims, demands, obligations, causes of action for property damages which may hereafter

---

[7]As previously stated, in his Amended Complaint, Plaintiff alleges that his attorney was terminated because he had too many cases pending and could not handle Plaintiff's case.

accrue or otherwise be acquired, on account of, or may in any way grow out of or which are the subject of the facts and circumstances surrounding the July 10, 2010, collision, including, without limitation, any and all known claims or any past, present, future injuries, damages or claims for property damage which have resulted or may result from the alleged acts or omissions of which are related in any way to the July 10, 2010, collision.

1.2 This Settlement Agreement Shall also apply to and [sic] Omni Insurance Group's past, present, and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, suppliers, partners, predecessors and successors in interest, and assigns and all other persons, firms, or corporations with whom Omni or any of the former have been, are now or may hereafter be affiliated except as previously excluded for those causes of action alleged in the Complaint against Delores Shaw and Shaw Insurance Company in Civil Action 2010-CV-33-10101361.

1.3  Claimants agree that this Settlement Agreement is a full general release for property damage.  Claimants expressly waive and assume the risk of any and all claims for property damages which exist as of this date, but of which Claimants do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise and which, if known, would materially affect the decision to enter in this Settlement Agreement.  The parties understand and agree that this settlement is a compromise of a doubtful and disputed claim as to the amounts of property damages allegedly sustained by Claimants.

Settlement and Release Agreement (Ex. M to Def. Motion).

General contract principles are applied in the construction of a settlement agreement because a settlement agreement is a contract. Pee Dee Stores, Inc. v. Doyle, 381 S.C. 234, 672 S.E.2d 799 (Ct. App. 2009).  When an agreement is plain and unambiguous, the court does not have the authority to modify its terms. Patricia Grand Hotel, LLC v. MacGuire Enters., 372 S.C. 634, 643 S.E.2d 692 (Ct. App. 2007).  Here, Plaintiff does not dispute the terms of the agreement, and, thus, because he has failed to show that he was somehow induced into signing the contract, the terms of the release are binding on Plaintiff.  However, to the extent Plaintiff asserts any claims that are not barred from the release, Plaintiff's causes of action are discussed below.

-12-

### C.    Deceptive Trade Practices

Plaintiff asserts that Omni is liable under the South Carolina Insurance Code for deceptive practices, presumably under either the Insurance Trade Practices Act, S.C. Code Ann. §§ 38-57-10, et seq. or the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 et seq. First, the Insurance Trade Practices Act prohibits insurance companies from engaging "in any trade practice which is defined in this chapter as, or determined pursuant to this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." S.C. Code § 38-57-20. The actions of Omni in this matter are regulated by this Chapter. However, the Act "clearly manifests legislative intent to create an administrative remedy and not a private right of action." Masterclean, Inc. v. Star Ins. Co., 347 S.C. 405, 556 S.E.2d 371 (2001).  Thus, any claim under the Insurance Trade Practices Act is not properly before the court.  Second, the Unfair Trade Practices Act does not "apply to unfair trade practices covered and regulated" under the South Carolina Insurance Trade Practices Act. See S.C. Code § 39-5-40(c); see also Trustees of Grace Reformed Episcopal Church v. Charleston Ins. Co., 868 F.Supp. 128, 132 (D.S.C. 1998). Therefore, the Plaintiff is barred from bringing an action under the Unfair Trade Practices Act.[8]  Accordingly, summary judgment is appropriate on Plaintiff's Deceptive Trade Practices cause of action.

### D.    Misrepresentation/Fraud

To establish a cause of action for fraud, the following elements must be proven by clear,

---

[8]Even if Plaintiff could bring a claim under the Unfair Trade Practices Act, to succeed on such a claim, a plaintiff must show that the defendant's actions adversely affected the public interest, which can be shown if the acts or practices have the potential for repetition.   Daisy Outdoor Adver. Co., Inc. v. Abbott, 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996); Crary v. Djebelli, 329 S.C. 385, 387, 496 S.E.2d 21, 23 (1998).  Plaintiff has failed to present evidence to support such a finding.

cogent, and convincing evidence: (1) a representation of fact, (2) its falsity, (3) its materiality, (4) either knowledge of its falsity or a reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. Austin v. Stokes-Craven Holding Corp., 387 S.C. 22, 691 S.E.2d 135 (2010).

To the extent Plaintiff is claiming Omni is liable for negligent misrepresentation, he is required to prove: 1) Omni made a false representation, 2) Omni had a pecuniary interest in making that representation, 3) Omni owed a duty of care to see that it communicated truthful information, 4) Omni breached that duty by failing to exercise due care, 5) the Plaintiff justifiably relied on the representation, and 6) the Plaintiff suffered pecuniary loss as a proximate result of his reliance on representation. Osborn v. University Medical Associates of Medical University of South Carolina, 278 F. Supp. 2d 720 (D.S.C. 2003).

Both of Plaintiff's arguments fail under either one of these causes of action. With respect to the lack of comprehensive and collision coverage on the Chevy Suburban, there is insufficient evidence that Omni ever made a false representation. None of the documents provided to Plaintiff ever indicated that he had such coverage. The Declarations and Amended Declarations Pages specifically showed a lack comprehensive and collision coverage on the Chevy Suburban.

In addition, with respect to the limit of Plaintiff's uninsured motorist property damage coverage, Plaintiff asserts that a false representation was made by LaFave and others that his limit for such coverage was $4,760. However, even assuming such a false statement was made, for the reasons discussed in detail above, Plaintiff had no right to rely on such a verbal statement because the clear language of the policy provided otherwise and Plaintiff has a duty to read his policy.

<u>Walpole</u>, 914 F. Supp. at 1291 ("Plaintiffs cannot rely on the representations of others as to the policy's contents. An insured has a duty to read the policy he purchases and to abide by its plain terms."); <u>Doub</u>, 268 S.C. at 327, 233 S.E.2d at 114 ("[O]ne cannot complain of fraud in the misrepresentation of the contents of a written instrument in his possession when the truth could have been ascertained by his reading the instrument.").

Therefore, because Plaintiff has failed to present sufficient evidence to support the required elements for fraud and negligent misrepresentation, summary judgment is appropriate on these causes of action.

### E.     Wrongful Denial of Coverage

South Carolina does not recognize such a cause of action.[9]  Furthermore, the record reveals that Plaintiff was not denied coverage in this action and that Plaintiff entered into a valid settlement and release agreement.  Thus, this argument is without merit.

### F.     Mental Stress

The court construes this cause of action as one for intentional infliction of emotional distress or outrage.  To recover for the intentional infliction of emotional distress, a plaintiff must establish that 1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; 2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" 3) the actions of the defendant caused the plaintiff's emotional distress; and 4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." <u>Ford v. Hutson</u>, 276 S.C. 157, 162, 276

---

[9]Plaintiff asserts a separate bad faith action, which is discussed below.

-15-

S.E.2d 776, 778-779 (1981). It is for the court to decide whether a defendant's conduct may be reasonably described as so extreme and outrageous as to warrant recovery. Todd v. South Carolina Farm Bureau Mut. Ins. Co., 283 S.C. 155, 321 S.E.2d 602 (Ct. App. 1984). Only where reasonable persons could differ is the question for the jury. Id.  Based upon the evidence presented in the record, no reasonable juror could conclude that the actions of Omni exceeded all possible bounds of decency or were atrocious and utterly intolerable in a civilized community.  Omni provided Plaintiff with a policy of insurance, made changes to the policy when requested by Plaintiff, issued Declarations and Amended Declarations Pages to Plaintiff to reflect the changes requested, and negotiated a settlement on Plaintiff's claim for property damage.  Cf. Shiftlet v. Allstate Ins. Co., 451 F.Supp.2d 763 (D.S.C. 2006) (Even in denying claim, Allstate's conduct could not reasonably be considered "so extreme and outrageous as to exceed all possible bounds of decency").  Accordingly, summary judgment is appropriate on this cause of action.

> G.    **Civil Conspiracy**

A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff. McMillan v. Oconee Mem'l Hosp., Inc., 367 S.C. 559, 626 S.E.2d 884, (2006).  Plaintiff argues that once Plaintiff made his claim and the agent identified in the Claims Notes as Danielle asserted that Plaintiff should have had collision and comprehensive coverage beginning in December of 2009, "the subsequent denial of all coverages" and denial of a copy of the endorsements as requested by Plaintiff evidence of a civil conspiracy.  Pl. Response pp. 9-10.  However, the record reveals that Omni did not deny all coverages.  Furthermore, the fact that

Plaintiff was not given a copy of the endorsements[10] is insufficient to show that Omni and the agency joined together for the purpose of injuring Plaintiff and causing him special damage. Accordingly, Plaintiff fails to create an issue of fact as to this civil conspiracy cause of action and summary judgment is appropriate.

**H.    Negligence**

Plaintiff alleges that Omni was negligent in failing to provide comprehensive and collision coverage on his Chevy Suburban. It is unclear whether Plaintiff alleges that Omni was negligent for failing to provide such coverage as of December 2009, the date Shaw agent Danielle asserts that coverage should have taken effect, or whether Plaintiff is arguing that Omni was negligent for not adding such coverage in July of 2010, after he reported his claim and Shaw agent Danielle stated that he should have had such coverage as of December 2009. Nevertheless, Plaintiff's claim fails under either argument.

To prove negligence, a plaintiff must show: (1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages. Steinke v. S.C. Dep't of Labor, Licensing and Regulation, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999). Under either scenario set forth above, Plaintiff fails to present sufficient evidence that Omni was negligent in failing to provide comprehensive and collision coverage. The evidence in the record reveals that Omni became aware of the purported comprehensive and collision coverage on the

---

[10] The record reflects that Cheryl Jackson with Omni advised Delores Shaw with the Shaw Insurance Agency to inform Plaintiff to have his attorney call the insurance agency's attorney to access the documents. Claims Notes Entry 19 (Ex. H to Def. Motion). This conversation occurred the same day Plaintiff filed the action against the insurance agency in magistrate's court. Id.; Complaint in Magistrate's Court (Ex. I to Def. Motion).

Chevy Suburban only after Plaintiff reported his claim on July 10, 2010. There is no evidence in the record that Omni was aware of any request for such coverage before that time and, thus, Omni was not negligent in failing to add it prior to the accident.

Plaintiff generally argues that Omni is liable for the negligence of the Shaw Insurance Company based upon agency principles. Even if this is true, Plaintiff fails to present evidence that he has suffered any damage as a result any negligence. As noted by Omni, "any apparent misunderstanding [regarding the type of coverage available] did not impact Omni's payment of the claim for the full value of the vehicle." Omni Motion p. 15. It is well settled that negligence without damages is not actionable. See, e.g., Gray v. Southern Facilities, Inc., 256 S.C. 559, 567, 183 S.E.2d 438, 442 (1971) ("It is basic that a negligent act is not in itself actionable and only becomes such when it results in injury or damage to another."); National Loan & Exchange Bank v. Lachovitz, 131 S.C. 432, 128 S.E. 10 (1925) ("It is fundamental and elemental that, in order to reap the benefit of negligence, the person pleading negligence must show that he has been injured by the negligence, and that the negligence was the proximate cause of the injury."). The settlement amount Omni agreed to pay was based upon the value of the vehicle, not the type of coverage under which the claim was paid. Plaintiff fails to show that, had he been provided with comprehensive and collision coverage as he allegedly requested, he would have been entitled to a different settlement amount. Therefore, he fails to show he suffered any injury or damages as a result of any negligence attributable to Omni. Thus, summary judgment is appropriate on Plaintiff's negligence cause of action.

### I.    Bad Faith

Plaintiff asserts that Omni acted in bad faith in the handling of his claim. To demonstrate bad faith, Plaintiff must present evidence of 1) the existence of a mutually binding contract of

-18-

insurance between the plaintiff and the defendant; 2) a refusal by the insurer to pay benefits due under the contract; 3) resulting from the insurer's bad faith or unreasonable action in breach of the implied covenant of good faith and fair dealing arising under the contract; 4) causing damage to the insured. Nichols v. State Farm Mut. Auto. Ins. Co., 279 S.C. 336, 306 S.E.2d 616 (1983). Under South Carolina law, an insured may recover damages for bad faith denial of coverage if he proves that there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract. Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co., 241 F.Supp.2d 572, 576 (D.S.C. 2002). Stated differently, if there was an objectively reasonable ground for contesting an insurance claim, there is no bad faith in the denial of it. Mixson, Inc. v. Am. Loyalty Ins. Co., 349 S.C. 394, 562 S.E.2d 659 (Ct. App. 2002).

As an initial matter, Omni did not deny Plaintiff's claim. Plaintiff and Omni reached an agreement and Omni paid Plaintiff $4,131.33 for the damage to his vehicle. Plaintiff signed the settlement and release agreement, whereby he represented that he fully understood the terms of the agreement and voluntarily accepted them. To the extent Plaintiff argues that Omni in bad faith denied his claim for comprehensive and/or collision coverage, Defendant had an objectively reasonable ground for denying such a claim because the policy did not provide for such coverage as to Plaintiff's Chevy Suburban. As such, summary judgment is appropriate on Plaintiff's bad faith claim.

### J.    Unjust Enrichment

Plaintiff argues that Omni was unjustly enriched by providing less than the full amount of coverage to which Plaintiff was entitled. "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." Dema v. Tenet Physician

Servs.–Hilton Head, Inc., 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009). The remedy for unjust

enrichment is restitution. See Sauner v. Pub. Serv. Auth. of S.C., 354 S.C. 397, 409, 581 S.E.2d 161,

167 (2003) ("Restitution is a remedy designed to prevent unjust enrichment."). To recover restitution

in the context of unjust enrichment, the plaintiff must show: (1) he conferred a non-gratuitous benefit

on the defendant; (2) the defendant realized some value from the benefit; and (3) it would be

inequitable for the defendant to retain the benefit without paying the plaintiff for its value. Campbell

v. Robinson, 398 S.C. 12, 24, 726 S.E.2d 221, 228 (Ct.App.2012); Niggel Assocs., Inc. v. Polo's of

N. Myrtle Beach, Inc., 296 S.C. 530, 532, 374 S.E.2d 507, 509 (Ct.App.1988).  Plaintiff fails to

present sufficient evidence to establish a right to restitution based upon unjust enrichment.  He fails

to present any evidence that he paid for comprehensive or collision coverage on the Chevy Suburban

or that Omni was in any other way unjustly enriched.  Furthermore, as discussed above, Plaintiff

signed a valid settlement and release agreement releasing Omni for any further claims of property

damage arising out of the collision on July 10, 2010.  Thus, Plaintiff's unjust enrichment claim fails.

### K.    Breach of Contract

Plaintiff also asserts a claim for breach of contract.  The elements for a breach of contract are

the existence of the contract, its breach, and the damages caused by such breach. Fuller v. E. Fire &

Cas. Ins. Co., 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962).  Plaintiff asserts that Omni breached a

contract when it failed to provide him with comprehensive and collision coverage.  However,

Plaintiff fails to present sufficient evidence to show the existence of any contract that provided for

such coverage.[11]  Thus, Plaintiff's breach of contract fails as well.

_____

[11]Plaintiff reiterates throughout his Response that the Claims Notes entry stating
"Danielle says that the suburban should have had comp/coll from December," proves that such
coverage existed.  However, as discussed in more detail above, this one statement is insufficient

## V.     CONCLUSION

For the reasons discussed above, Plaintiff fails to present sufficient evidence to create a genuine dispute of material fact as to any of the claims he alleges in his Amended Complaint.[12] Therefore, it is recommended that Defendant's Motion for Summary Judgment (Document # 96) be granted and this case dismissed in its entirety.  Furthermore, for the same reasons, it is recommended that Plaintiff's Motions for  Declaratory Judgment (Documents # 107, 115) be denied.[13]

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 5, 2013
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

to create an issue of fact.

[12]Plaintiff points to what he perceives to be numerous discrepancies in the documents presented by Omni in support of its Motion for Summary Judgment.  However, as set forth in the Affidavit of Michael Arnold, the documents submitted by Omni are authentic copies of original documents generated by Omni and maintained in the ordinary course of business.  Arnold Aff. ¶¶ 1-2 (Ex. A to Def. Motion).  Plaintiff fails to show otherwise.  Furthermore, to the extent Plaintiff points to discrepancies that have not been specifically discussed herein, the undersigned has reviewed Plaintiff's arguments as to these alleged discrepancies and finds them to be insufficient to create a genuine issue of material fact.

[13]In his first Motion for Declaratory Judgment, Plaintiff seeks a declaration that the settlement and release agreement he signed is void and, thus, he has "standing" to bring this action.  In the second Motion for Declaratory Judgment, Plaintiff seeks a declaration of his rights to pursue this action based upon the fraudulent documents submitted by Omni in this case.  The undersigned has addressed Plaintiff's arguments regarding the authenticity of documents both here and in a separate order addressing Plaintiff's Motions for Sanctions.